**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT, PENNSYLVANIA**

| | |
|---|---|
| DAWN MORAN, | : |
| | : |
| *Plaintiff*, | : |
| | : Case No.:   2:21-cv-141 |
| v. | : |
| | : |
| MOUNTAIN VIEW DENTAL LLC, and | : |
| DR. CARL HUTCHERSON, *both jointly* | : **COMPLAINT** |
| *and severally*, | : |
| | : |
| *Defendants.* | : |

Filed on behalf of Plaintiff:
Dawn Moran

Counsel of Record for this Party:

**The Law Firm of Fenters Ward**

Joshua P. Ward
Pa. I.D. No.: 320347

The Law Firm of Fenters Ward
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206
consumerprotection@fentersward.com

Telephone No.:     412 – 545 – 3016
Fax no.:     412 – 540 – 3399
Email: jward@fentersward.com

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT, PENNSYLVANIA

| | |
|---|---|
| DAWN MORAN, | : |
| *Plaintiff,* | : : : Case No.: |
| v. | : : |
| MOUNTAIN VIEW DENTAL LLC, and DR. CARL HUTCHERSON, *both jointly and severally*, | : : : : |
| *Defendants.* | : : |

## COMPLAINT

AND NOW comes Dawn Moran, the Plaintiff, by and through the undersigned counsel, The Law Firm of Fenters Ward, and specifically, Joshua P. Ward, Esquire, and now files the following Complaint averring as follows:

## PARTIES

1. Plaintiff, Dawn Moran (hereinafter "Ms. Moran") is an adult individual residing at 63 Ashley Drive, Greensburg, Pennsylvania 15601.

2. Defendant, Mountain View Dental, LLC (hereinafter "Mountain View) is a Pennsylvania corporation with a principal place of business located at 105 Meadow Spring Road, Greensburg, Pennsylvania 15601.

3. Defendant, Dr. Carl Hutcherson is the owner and practitioner of Mountain View Dental, LLC.

4. Mountain View is a medical group practice specializing in Dentistry that serves children, teens, and adults in Greensburg and Latrobe, Pennsylvania.

## JURISDICTION AND VENUE

5. Jurisdiction is proper as Plaintiff brings this lawsuit under the Fair Labor Standards Act 29 USCS §215 *et seq.* (hereinafter "FLSA") and the Wage Payment and Collection Law 43 P.S. §260.1 *et seq.* (hereinafter "WPCL").

6. This Court has jurisdiction over Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a).

7. A substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## FACTUAL ALLEGATIONS

8. On or around September 27, 2018, Ms. Moran commenced employment with Mountain View as a dental assistant.

9. Ms. Moran was paid $17.25 an hour for her work as a dental assistant.

10. In the first week of Ms. Moran's employment, she was required to punch out for the day and then attend a meeting. Ms. Moran questioned why she had to punch out before and not after the meeting, which could last from 15 to 30 minutes, and was told by her supervisor, Tona Tissue (hereinafter, "Ms. Tissue"), it was company policy.

11. Ms. Moran also questioned the office manager, Susan Hutcherson, about the illegalities of having to punch out before attending employee meetings held at the end of the day. Ms. Hutcherson ignored Ms. Moran's concerns.

12. In November of 2018, Dr. Carl Hutcherson, (hereinafter, "Dr. Hutcherson") Ms. Moran's employer, informed Ms. Moran she was to punch out before said meetings.

13. Three days following this conversation, Dr. Hutcherson informed his employees that Mountain View Dental was under investigation by the Department of Labor.

14. Afterwards, in November of 2018, the Department of Labor sent an attorney, "Dave," to Mountain View to investigate a claim filed by an employee that Mountain View was not compensating its employees for time worked during its daily end of day meetings.

15. During his visit, "Dave" interviewed everyone separately about Mountain View's time keeping policies, including Ms. Moran.

16. In her interview, Ms. Moran informed "Dave" that for its end of day meetings, Mountain View required its employees to clock out so that they would not be compensated for this time.

17. Following this, the Department of Labor forced Mountain View to adjust its time keeping policies so that its employees were compensated for the daily end of day meetings.

18. However, this policy was abolished approximately one month after "Dave" visited Mountain View. Ms. Tissue, at Dr. Hutcherson's direction, specifically informed Ms. Moran that she was to punch out before the end-of-day meeting.

19. Although Ms. Moran was not the individual who initially contacted the Department of Labor regarding Mountain View's timekeeping policies, Ms. Moran participated in said investigation. Additionally, her employer and coworkers believed Ms. Moran instigated the Department of Labor investigation and subsequently blamed Ms. Moran for said investigation.

20. Approximately three weeks after the Department of Labor investigation, Susan Hutcherson (hereinafter "Mrs. Hutcherson"), the office manager and wife of Dr. Hutcherson,

became upset with Ms. Moran, believing that Ms. Moran had contacted the Department of Labor. Mrs. Hutcherson said to Ms. Moran, "Do you know how much work you've created for me, with what you said to Labor?" and "I have to go back two years, all employees. . ." before abruptly stopping and dismissing Ms. Moran, stating, "I don't have time for this, I have too much work to do, thanks, you are dismissed!"

21. Furthermore, Ms. Moran was treated poorly by her coworkers following her participation in the Department of Labor investigation including Head Assistant Christy Zegland (hereinafter "Ms. Zegland").

22. Throughout Ms. Moran's employment, Ms. Zegland regularly referred to Ms. Moran by a number of derogatory terms, including but not limited to, "princess," "asshole," "bitch," "baby," "agitator," "instigator," and "liar."

23. These comments were made in connection with and due to Ms. Moran's participation in the Department of Labor investigation.

24. Furthermore, throughout her employment, Ms. Moran was subject to ongoing and constant abuse and discrimination at the hands of Dr. Hutcherson personally due to her participation in the Department of Labor investigation. This abuse was both physical and verbal in nature and was a regular occurrence at the hands of Dr. Hutcherson.

25. Co-workers of Ms. Moran informed her that the staff at Mountain View assumed Ms. Moran had instigated the aforementioned Department of Labor investigation.

26. A co-worker of Ms. Moran, Angela Starkey (hereinafter, "Ms. Starkey") regularly witnessed several staff members threaten, intimidate, and retaliate against Ms. Moran for the Department of Labor investigation.

27. Upon information and belief, Mr. Hutcherson directed the staff at Mountain View to retaliate against Ms. Moran for the Department of Labor investigation.

28. In March 2020, Mountain View temporarily closed its doors due to the COVID-19 global pandemic in compliance with Governor Tom Wolf's "Order of the Governor of the Commonwealth of Pennsylvania Regarding the Closure of All Businesses that are Not Life Sustaining."

29. Mountain View reopened on June 1, 2020, and Ms. Moran returned to work the same day.

30. Upon her return to work, Dr. Hutcherson asked Ms. Moran to sign a false statement stating that Ms. Moran had been disrespectful and insubordinate.

31. Dr. Hutcherson informed Ms. Moran that if she refused to sign this statement that she would be terminated from her position.

32. Ms. Moran refused to sign the statement and was terminated from her position on June 3, 2020.

33. Ms. Moran has not been compensated by Mountain View for her earned wages during the times she was required to attend the end of day meetings. Additionally, Ms. Moran has been retaliated resulting in her termination in connection with the Department of Labor investigation.

### COUNT I
**Defendant Dr. Hutcherson is Individually Liable for
Violations of the FLSA Pursuant to the Participation Theory.
(Pled in Connection with Count II and Count III).**

34. Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

35. The courts of this Commonwealth have long recognized the "participation theory", whereby, a corporate officer or representative who participates in wrongful, injury-producing conduct can be personally liable, that is, individually liable for torts committed while acting within the scope of his or her employment by the corporation. *Loeffler v. McShane*, 539 A.2d 876 (Pa.Super.1988); *Moy v. Schreiber Deed Sec. Co.*, 535 A.2d 1168 (Pa.Super.1988); *Amabile v. Auto Kleen Car Wash*, 376 A.2d 247 (Pa.Super.1977); *Tayar v. Camelback Ski Corp., Inc.*, 957 A.2d 281 (Pa.Super.2008).

36. An officer cannot shield himself or herself behind a corporation when he or she is an actual participant in the tort. *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602 (3d Cir. 1978).

37. Moreover, the fact that a corporation may be vicariously or secondarily liable under the doctrine of *respondeat superior* does not relieve the individual of his or her responsibility. An action against such individual may exist even though the agent or officer derived no personal benefit, but acted on behalf of, and in the name of, the corporation and the corporation alone was enriched by the act. *Shonberger v. Oswell*, 530 A.2d 112 (Pa.Super.1987); *Kaites v. Com. of Pa., Dept. of Environmental Resources*, 529 A.2d 1148 (Pa.Commw.1987).

38. There is a distinction between liability for individual participation in a wrongful act and an individual's responsibility for any liability-creating act performed behind the veil of a sham corporation; when the court pierces the corporate veil, the owner is liable because the corporation is not a bona fide independent entity and therefore its acts are truly the owner's, while under the participation theory, the court imposes liability on the individual as an actor rather than as an owner. *Shay v. Flight C Helicopter Services, Inc.*, 822 A.2d 1 (Pa.Super.2003).

39. Plaintiff has asserted a cause of action sounding in tort pursuant to the FLSA seeking compensation and redressing all Defendants, corporate and individual.

WHEREFORE, Plaintiff, Dawn Moran, respectfully requests this Honorable Court enter judgment in her favor and against Defendant, Mountain View Dental LLC, and Defendant Dr. Carl Hutcherson enter any and all liquidated damages as well as attorney's fees authorized by Defendants' violations of the Fair Labor Standards Act, 29 U.S.C. §201, *et seq.*

## COUNT II
## RETALIATION IN VIOLATION
## OF THE FLSA

40. Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

41. Under the Fair Labor Standards Act (hereinafter "FLSA"), it is unlawful for an employer to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the Fair Labor Standards Act]. . . or has testified or is about to testify in any such proceeding." 29 USCS §215(3).

42. The anti-retaliation provision of the FLSA "protects only employees who are asserting their statutory rights." *Bauer v. Pottsville Area Emergency Med. Servs.*, 758 A.2d 1265, 1271 (Pa. Super. 2000).

43. In order to establish a prima facie case of retaliation under the FLSA, a plaintiff must show "(1) he engaged in a protected activity; (2) he was subjected to an adverse employment action following his protected activity; and (3) there was a causal connection between the activity and the adverse action." *Id.*

44. Plaintiff is an "employee" as defined by 29 U.S.C.S. §203(e)(1) of the FLSA.

45. Defendant is an "employer" as defined by 29 U.S.C.S. §203(d) of the FLSA.

46. In November 2018, an attorney from the Department of Labor visited Mountain View Dental following a report of improper timekeeping practices by one of the employees.

47. Although Ms. Moran was not the individual who reported Mountain View to the Department of Labor, many of its employees believed that she was the reason that the business was being investigated.

48. While there, the attorney from the Department of Labor interviewed everyone separately regarding the timekeeping practices, including Ms. Moran. Ms. Moran participated in said investigation.

49. Following the visit from the Department of Labor, Mountain View began regularly denigrating Ms. Moran, believing not only that she had reported Mountain View's unlawful practices to the Department of Labor, but also that she provided information to the attorney regarding the improper timekeeping methods during his visit.

50. This poor treatment continued to escalate during Ms. Moran's tenure at Mountain View Dental and culminated in Ms. Moran's termination.

51. "The discharge of an employee under the mistaken impression that he participated in protected activity is enough to violate the Fair Labor Standards Act." *Id.* (citing *Brock v. Richardson,* 812 F.2d 121 (3d Cir. 1987)).

52. "In interpreting 29 U.S.C.S. §215(a)(3), the federal courts in Pennsylvania have focuses on the *circumstances* surrounding the employee's discharge and the timing of an action under the Fair Labor Standards Act." *Id*. at 1271.

53. During the time leading up to Ms. Moran's termination, she was subjected to continuous and increasingly hostile treatment from Mountain View Dental, Dr. Hutcherson, and fellow employees stemming from the November 2018 Department of Labor investigation.

54. Because the hostile treatment began following the Department of Labor inquiry and continued up until Ms. Moran's ultimate termination, there is a sufficient and tangible relationship between the timing of Ms. Moran's firing and the timing of the action under the FLSA.

55. Thus, Mountain View's retaliatory termination of Ms. Moran represents a willful violation of 29 U.S.C.S. §215(3) of the FLSA.

WHEREFORE, Plaintiff, Dawn Moran, respectfully requests this Honorable Court enter judgment in her favor and against Defendant, Mountain View Dental, LLC, and Defendant, Dr. Carl Hutcherson. Specifically, Plaintiff requests this Court award her back pay, front pay, any other compensatory and punitive damages as calculated by the Court, pre-judgment and continuing interest as calculated by the Court, and reasonable attorney's fees.

### COUNT III
### UNPAID WAGES IN VIOLATION OF THE
### FAIR LABOR STANDARDS ACT

56. Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

57. Under the FLSA, "every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce. . . . not less than the minimum wage rate." 29 U.S.C.S. §206(b).

58. Under Department of Labor regulations established by the FLSA, "an employer must compensate employees if it 'knows or has reason to believe [the employee] is continuing to work . . ." 29 CFR §785.11.

59. An employer can be deemed have violated the FLSA willfully when "it 'knew or showed reckless disregard for the matter of whether its conduct was prohibited' by the Fair Labor Standards Act." *Martin v. Selker Bros., Inc.,* 949 F.2d 1286, 1296 (3d Cir. 1991).

60. This includes "disregard for the governing statute and an indifference to its requirements." *Id.*

61. In this case, Mountain View was aware that its timekeeping procedures were improper, as a Department of Labor-employed attorney visited the workplace for that very reason.

62. Further, following the attorney's visit, Mountain View Dental implemented a new timekeeping method that required employees to punch in and out using a timeclock.

63. However, less than a month after the attorney's visit, these procedures were abandoned.

64. The fact that Mountain View Dental was put on notice of violating the Fair Labor Standards Act and implemented changes to correct this before ultimately returning to their illegal behavior indicates that Mountain View Dental exhibited reckless disregard.

65. By exhibiting this reckless disregard toward proper timekeeping procedures, Mountain View Dental willfully violated the Fair Labor Standards Act.

66. By forcing employees to clock out before staff meetings, Mountain View Dental kept improper records of time worked by its employees.

67. To recover under the FLSA "when an employer does not have accurate records, the employee need only show that he has in fact performed work for which he was not properly compensated, and produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Id.* at 1298.

68. Where employers have failed to "comply with their statutory duty to keep adequate records, courts have resorted to documentary evidence as a basis for inferring hours worked." *Id.*

69. Further, in making such a showing, "it is not necessary for every single affected employee to testify in order to prove violations or to recoup back wages." *Id.*

70. Instead, "the testimony and evidence of representative employees may establish prima facie proof of a pattern and practice of Fair Labor Standard Act violations." *Id.*

71. As such, the statements made by Ms. Moran stating that Mountain View required employees to work off-the-clock meetings are sufficient to meet this standard.

72. Once an employee has established prima facie proof of a pattern and practice of FLSA violations. "the burden shifts to the employer to rebut the existence of the violations, or to prove that individual employees are excepted from the pattern or practice." *Id.*

73. Mountain View violated the FLSA by requiring its employees to work unrecorded hours that it knew about, as a result, its actions were in violation of the FLSA and it bears the burden of proof.

WHEREFORE, Plaintiff, Dawn Moran, respectfully requests this Honorable Court enter judgment in her favor and against Defendant, Mountain View Dental, LLC, and Defendant, Dr. Carl Hutcherson, and enter any and all wages, including base pay, due to Plaintiff, as well as attorney's fees and liquidated damages pursuant to 29 U.S.C.S. §206(b) of the Fair Labor Standards Act.

## COUNT IV
## UNPAID WAGES IN VIOLATION OF THE WPCL

74. Plaintiff incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

75. Section 260.5(a) of the WPCL provides:

> Whenever an employer separates an employee from the payroll, or whenever an employee quits or resigns his employment, the wages or compensation earned shall become due and payable not later than the next regular payday of his employer on which such wages would otherwise be due and payable.

43 P.S. §260.5(a).

76. Wages include "all earnings of an employee, regardless of whether determined on time, task, piece, commission, or other method of calculation.  The term "wages" also includes fringe benefits or wage supplements…" 43 P.S. §260.2(a).

77. Under the WPCL, the definition of employer "includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above mentioned classes employing any person in this Commonwealth." 43 P.S. §260.2a.

78. The Pennsylvania WPCL, 43 P.S. §260.1 *et seq.*, however, does not provide "a statutory definition of the term 'employee'." *Frank Burns, Inc. v. Interdigital Communs. Corp.*, 704 A.2d 678, 680-81 (Pa Super. 1997).

79. Courts in Pennsylvania have held that "any person in Pennsylvania can qualify as an employee under the WPCL," because "grammatically, an 'employee' is an entity that is employed," and "in the definition of employer, the entity employed by the employer, i.e., the employee, is any person in Pennsylvania." *Frank Burns v. Interdigital Communs. Corp.*, at 681.

80. Pennsylvania courts have thus narrowed the definition of employee accordingly: "those who work in Pennsylvania can sue under the Pennsylvania statute, but those who do not work in Pennsylvania cannot." *Id. Citing Killian v. McCulloch*, 873 F. Supp. 938, 942 (E.D. Pa. 1995).

81. As a company with its articles of incorporation corporation in the Commonwealth of Pennsylvania, Mountain View is an employer within the definition of the WPCL 43 Pa. C.S. §260.1a.

82. Dawn Moran was an employee of Mountain View working within the Commonwealth of Pennsylvania.

83. By forcing employees to clock out before staff meetings, Mountain View kept improper records of time worked by its employees.

84. By failing to pay Dawn Moran the wages she is owed for attending the staff meetings, Mountain View Dental violated 43 P.S. §260.5(a) of the WPCL.

85. As a direct and proximate result of the aforementioned conduct, Dawn Moran suffered actual damages, including, but not limited to, lost wages and emotional distress in the past present and future.

WHEREFORE, Plaintiff, Dawn Moran, respectfully requests this Honorable Court enter judgment in their favor and against Defendant, Mountain View Dental, LLC, and enter any and all wages of paid time off or vacation pay due to Plaintiff, as well as attorney's fees and liquidated damages pursuant to 43 P.S. §260.9 of the Wage Payment and Collection Law.

**JURY TRIAL DEMANDED.**

Respectfully Submitted,

**THE LAW FIRM OF FENTERS WARD**

Date: January 4, 2021        By:_____
    Joshua P. Ward (Pa I.D. No. 320347)
    Kyle H. Steenland (Pa I.D. No. 327786)

    The Law Firm of Fenters Ward
    The Rubicon Building
    201 South Highland Avenue
    Suite 201
    Pittsburgh, PA 15206

    Counsel for Plaintiff